IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | Criminal Action No. 18-75-JDW |
| | : | |
| Michael PRITCHETT, | : | |
| (a.k.a. "M-Dot," "Dot," "Mikey," | : | |
| "Tucker Maxx"), and | : | |
| | : | |
| Dion OLIVER, | : | |
| (a.k.a. "Ollie," "Sadiqwakil Aleem," | : | |
| "Sadizwaleez Aleem," "FineWine," | : | |
| "Bop," "Bopper"), | : | |
| | : | |
| Defendants. | : | |

## MEMORANDUM

The Covid-19 pandemic has tested much of what we, as a society, understand about the sometimes-tense relationship between individual liberty and public health. Trial by jury has been a particular challenge in this tradeoff because jury trials are, by their nature, congregate events that courts must conduct at a time that public health authorities are telling the jury pool to avoid such events. While it is easy to invoke the trope of "health" to justify intrusions on liberty, such as limits on jury trials or the eligible members of a jury pool, the Supreme Court has indicated that the Constitution provides a bulwark against those intrusions: "[E]ven in a pandemic, the Constitution cannot be put away and forgotten." *Roman Catholic Diocese of Brooklyn v. Cuomo*, 141 S.Ct. 63, 68 (2020).

Against this backdrop, the Government has moved the Court to exclude from the jury pool all jurors who are not "up to date" on their Covid-19 vaccines,

meaning they have had a relatively recent initial vaccine or have received a booster shot. The Government seeks to justify this limitation by claiming that it will facilitate a smoother trial in this lengthy criminal proceeding. The Court will decline the Government's invitation to limit the jury pool, though. The Court sees several potential pitfalls in the Government's proposal that make it inappropriate for consideration. Even if the Court were to assess it under the Supreme Court's test for evaluating jury limitations (*see Duren v. Missouri*, 439 U.S. 357 (1979)), the Court would decline to adopt it.

The Sixth Amendment to the Constitution guarantees the accused a trial by "an impartial jury of the State and district wherein the crime shall have been committed . . . ." U.S. Const. Amend. VI. This means that criminal defendants have a right to a trial by an impartial jury drawn from sources reflecting a fair cross section of the community." *Berghuis v. Smith*, 559 U.S. 314, 319 (2010) (citation omitted). To ensure impartiality, jurors must be drawn from "diverse segments of the population." *United States v. Savage*, 970 F.3d 217, 252 (3d Cir. 2020) (citing *Holland v. Illinois*, 493 U.S. 474, 480 (1990)). "A corresponding statutory framework [the Jury Selection and Service Act of 1968] facilitates the selection of a representative jury." *Savage*, 970 F.3d at 252; *see* 28 U.S.C. § 1861.

The Jury Selection Act provides that "no person or class of persons shall be disqualified, excluded, excused, or exempt from service as jurors: Provided, That any person summoned for jury service may be . . . excluded by the court on the ground that . . . his service as a juror would be likely to disrupt the proceedings."

18 U.S.C. § 1866(c). The permissive language of this statute—"may be"—indicates that the Court does not have to exclude a potential juror, and it certainly does not have to exclude a group of people from the pool of potential jurors.

A vaccination requirement along the lines the Government proposes could hamper the Court's ability to assemble a jury. Current statistics suggest that only 34% of Delaware residents over the age of 18 have received booster shots.[1] That includes 65% of those who are over the age of 65, many of whom are not part of the jury pool because of their age. The result of excluding from the jury pool a large number of people with a high vaccination rate will be to lower the rate of people over the age of 18 in the remaining pool. There could be additional members of the jury pool who are eligible because they received their vaccinations recently. But in any event, the numbers suggest that a vaccine requirement along the lines the Government proposes would exclude nearly 2/3 of potential jurors from the jury pool.

The Court's concern about the Government's proposal is not just for the Parties' rights or even for the administration of justice; it is also for the members of the public that the Government would exclude from the jury pool. Thomas Jefferson viewed the opportunity to serve on a jury as more important than the opportunity to vote. *See* Letter from Thomas Jefferson to the Abbé Arnoux (July 19, 1789), reprinted in 15 Papers of Thomas Jefferson (J. Boyd ed., 1958) ("Were I

---

[1] *Vaccine Tracker*, available at https://myhealthycommunity.dhss.delaware.gov/locations/state/vaccine-tracker (last visited Jan. 27, 2022).

called upon to decide whether the people had best be omitted in the Legislative or Judiciary department, I would say it is better to leave them out of the Legislative. The execution of the laws is more important than the making them."). Alexander Hamilton reported that the "friends and adversaries of the plan of the [Constitutional] convention, if they agree in nothing else, concur at least in the value they set upon the trial by jury." The Federalist No. 83. And the Supreme Court has described the opportunity to serve on a jury as "fundamental to our democratic system" (*J.E.B. v. Alabama ex rel. T.B.*, 511 U.S. 127, 145 (1994)) and an "honor and privilege" that is, for many citizens, "their most significant opportunity to participate in the democratic process" other than voting (*Powers v. Ohio*, 499 U.S. 400, 407 (1991)).

The members of the public whose civil rights this restriction would curtail are not before the Court. And, if the Court were to impose the restriction that the Government asks, they might never know that the Court has curtailed their fundamental rights. Depriving an individual of such a civic duty, without an opportunity to explain why the Court intends to deprive the person of the opportunity to serve, requires a weighty showing. But neither the Court nor the Parties knows how excluding a substantial portion of the jury pool would alter the pool. For other proposed limits on the jury pool, courts, lawyers, and social scientists can draw on their experience to make reasonable conclusions about the effect of a proposed change. But when it comes to this pandemic, and the way rules might ripple through society, everyone is flying blind. The Court is not

4

prepared to make such a change, and impact citizens' rights, based only on the speculative record before it.

Finally, even if the Court were to consider the Government's proposal under the Supreme Court's decision in *Duren*, it would still decline to implement the restrictions that the Government proposes. Defendants have offered statistical evidence that the vaccine restriction might have a disparate impact on minority participation in the jury pool. The Court will assume that that showing is enough to demonstrate that the restriction is a proxy for race—though to be clear, the Court does not think that the Government proposed this restriction with a racial motive. But under *Duren*, the Government has to show that its proposal is no broader than necessary to serve a significant state interest. *See Duren*, 439 U.S. at 368–70. Ensuring a smooth, uninterrupted trial is a significant state interest. But the Court concludes that a less restrictive option remains to balance the competing concerns: wait until *voir dire* to test the vaccination status of potential jurors. At that point, the Parties and the Court have a better sense of how any exclusion will impact the make-up of the jury, and it can decide then how best to balance the need for a smooth trial with the various rights at play.

**BY THE COURT:**

*/s/ Joshua D. Wolson*
**JOSHUA D. WOLSON, J.**

January 28, 2022

5